BOUTALL, Judge.
This was a suit on breach of contract by Clasco Construction Company against Banner Corporation and Land Plans, Inc., two development corporations owned and operated by the Wiegand family. Plaintiff Clasco appeals the trial court’s judgment in favor of defendants Banner and Land Plans. We affirm.
This dispute arose around the construction of the Glen Della Subdivision in West-wego, Jefferson Parish. In 1967 Robert Wiegand, Jr., President of Banner and Land Plans, bought an undeveloped tract with the intention of subdividing and selling parcels to builders. Title was taken by Land Plans, and this is Land Plans’ only connection with this suit. When Wiegand could not interest any builders, he decided that Banner Corp. would construct the houses itself, on a “build as they are sold” basis because financing for the venture was hard to obtain.
The three Clasco partners, Widlitz, Bernard and Meyer, approached Mr. Wiegand after Banner Corp. had begun construction on the first four houses, under the supervision of Mr. Buster Sherman. Clasco proposed to handle sales of the houses with a commission on each when the sale was closed. The parties agreed verbally and a short time later also agreed that Clasco would supervise construction of the houses at a rate of $200.00 per house, and would furnish lumber and materials, not incidentally, from a lumber yard owned by a Clas-co partner. Wiegand testified that he entered into these arrangements with Clasco because he was dissatisfied with Sherman’s slowness in completing the model homes, and Clasco had represented to him that they could have a house completed in a maximum of 60 days. In turn, Wiegand became dissatisfied with Clasco’s perform- *1223 anee and terminated their agreement. Clasco then sued for damages for breach of contract.
The supervision agreement between Banner and Clasco was confirmed by a brief letter dated June 12, 1968. The June 12th letter does not definitively state that the parties agreed that Clasco would supervise the building of all of the projected 320 houses, nonetheless this was Clasco’s position at trial and on appeal, and it has sued for lost profits on the remainder of the houses built. We need not decide the scope and duration of the agreement which was contemplated by the parties because we find that Clasco failed to perform even a minimum of its agreed upon duties, and was in active breach of its contract with Banner at the time their business relationship was severed.
The three Clasco partners’s work was satisfactory to Wiegand at the outset but eventually there were delays and mistakes in construction, absenteeism on the part of Widlitz, Fletcher, and Meyer, and according to most accounts heavy drinking by them at the job site. Wiegand testified that he was forced to assume more and more of the supervision as these problems grew.
At trial several subcontractors testified for defendant Banner as to the shoddy workmanship and delays they encountered while working under Clasco, as well as to the considerable drinking which the three Clasco partners did during working hours. Regarding the delays, Widlitz and Meyer of Clasco testified that Banner’s slowness in paying some of the subcontractors added to delays caused by unavailability of various materials. There is some support for Clas-co’s contention on this point. Banner’s shoe-string financing was not conducive to the smooth flow of operations, and subcontractors could not be paid until final inspection.
Wiegand testified that in the fall of 1969 he became fed up with the delays in construction of Glen Della and the problems he was having with the three Clasco partners. He had repeatedly voiced his dissatisfaction with their performance and had warned them about the drinking, but to no avail. At this time Wiegand was doing at least 80% of the supervision himself and the delays were causing large amounts of interest to accrue on the land loan. Wiegand verbally terminated the business relationship on September 16, 1969 and sent Clasco a letter of confirmation to that effect.
In response, Clasco, taking the position that they were under contract to supervise construction of 320 houses, immediately sent Banner a letter putting it in default. Robert Wiegand refused to renew the business relationship and this litigation ensued.
ISSUES
Appellant has raised four issues on appeal, namely:
1. Was Banner’s action to dissolve the contract in keeping with proper procedure to do so as defined in Louisiana Civil Code?
2. By not following outlined procedures for rescission, did Banner itself actively breach the contract?
3. What were the number of houses contemplated by the parties to be supervised under the contract?
4. What damages should Clasco receive for Banner’s active breach?
We do not find it necessary to reach the last 3 issues because we find that Clasco actively breached its contract with Banner Corp. through a continuously substandard performance, and on some occasions nonperformance of its duties. The trial court, in its Judgment, made 2 findings of fact: that Clasco’s employees were doing considerable on the job drinking and that Banner had just cause to terminate its business relationship with Clasco. We concur with the trial judge. A review of the testimony amply supports his findings.
At trial several subcontractors testified with surprising similarity as to the “parade of horribles” they experienced while working at Glen Della under Clasco’s management.
Mr. Frank O’Brien, the floor and tile contractor, testified that he had to wait up to 2 *1224 weeks at a time for flooring to be provided to him; flooring, he testified, which was readily available in the New Orleans area from several lumberyards on 24 hours notice. When his crew attempted to tile the bathrooms, much patching up and “furring out” of the walls was required because the sheetrock had been installed incorrectly. Also because of the delays, he was often forced to go work at other jobs while waiting to be provided with materials at Glen Della. O’Brien testified that in the 2 years he worked on the Glen Della homes he had only seen one of the Clasco partners inspecting houses, and could recall only 3 or 4 such inspections. O’Brien frequently saw the Clasco partners drinking whiskey, and added that their sales office reeked of it.
Charles Ray, a painting subcontractor, also testified as to Clasco’s long delays in furnishing such items as door frames, doors, and kitchen cabinets, which in turn delayed his painting. The piecemeal ordering and installation of the materials forced Ray to paint the interiors bit by bit, resulting in much duplication of effort and added cost to Banner Corp. Ray also testified about the constant drinking, stating that on one occasion he witnessed one of the Clasco members so intoxicated that he could not guide the glass of whiskey to his mouth and poured it on his desk.
Emmett Smith, a plumbing contractor, testified that he would at times receive a call from Clasco telling him to come out to install plumbing, and when he would arrive the houses would not be ready for his work. In some of the kitchens, countertops had been ordered and put in which were too narrow for the installation of the sinks. Smith was also a witness to the drinking during working hours.
Yanice Matherne and John Vidios, trim carpenters, testified that due to Clasco’s delays in supplying them with materials, they sometimes had nothing to do but walk around the subdivision. At the time of trial, Matherne was still working at correcting mistakes which were made under Clas-co’s supervision.
Mr. Edwin Decay, a purchaser of one of the Glen Della homes, testified that he would often visit the site in the afternoon to check the progress on his house. By his estimate on at least fifty occasions he witnessed the Clasco partner with whom he dealt inebriated, and “happy and jolly”, in his words.
It is evident from just this brief recap of testimony that Clasco was not only negligent in its supervisory duties but also its employees conducted themselves in an extremely unprofessional manner, and they failed to perform to a substantial degree the coordination of the work and the ordering of materials which were necessary to keep the subdivision venture running smoothly. The unreasonable delays and the defective work were the direct responsibility of Clasco to prevent. These, as well as the excessive drinking by the Clasco partners, represent an active breach of their contractual duties toward Banner Corp.
Under these circumstances, and as provided by Louisiana Civil Code article 1926, Banner Corp. was entitled to dissolve its contract with Clasco, and was relieved of the obligation to formally put Clasco in default. La.C.C. Art. 1932. It follows that as the breaching party, Clasco is not entitled to the damages which it claims.
For the foregoing reasons the judgment of the district court is affirmed.
AFFIRMED.